**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEEANDRA TERRELL**, on behalf of herself and all others similarly situated, | ) ) ) | CASE No. 1:19-cv-2762 |
| Plaintiff, | ) ) | **JUDGE JAMES S. GWIN** |
| v. | ) ) ) | **JOINT MOTION FOR FAIR LABOR STANDARDS ACT** |
| **HEALTH CARE BRIDGE, INC.**, *et al.*, | ) ) | **SETTLEMENT APPROVAL** |
| Defendants. | ) ) | |

## I.  INTRODUCTION

Representative Plaintiff Deeandra Terrell ("Representative Plaintiff") and Defendant Health Care Bridge, Inc., Health Care Bridge, LLC, and Home Health Care Bridge, LTD ("Defendants")[1] (collectively, the "Parties") respectfully move this Court to approve the proposed Fair Labor Standards Act of 1938 (FLSA) settlement reached by the Parties and memorialized in the attached Joint Stipulation of Settlement and Release (the "Settlement" or "Agreement").

The proposed Settlement will resolve bona fide disputes involving overtime compensation claims under the FLSA, 29 U.S.C. § 201, *et seq.*, and Ohio Revised Code (O.R.C.) § 4111.03(D), as well as for violations of O.R.C. § 4113.15 (Ohio Prompt Pay Act). For settlement purposes only, the Parties agree that Representative Plaintiff and the "Eligible Settlement Participants" (as defined below) are similarly situated for purposes of 29 U.S.C. §216(b) and consent to Court-facilitated notice of the pendency of this action and proposed settlement thereof to the Eligible Settlement Participants.

---

[1] The collective reference of "Defendants" is used for the purposes of this Settlement Motion. *See attached* **Exhibit A** (Joint Stipulation of Settlement and Release) at ¶ 3 ("'Defendants' shall mean Defendants Health Care Bridge, Inc. and Health Care Bridge, LLC . . .") and ¶18 ("Defendants represent, and the Parties agree for the purposes of Settlement, that no Group Member ever had any employment or payroll-related relationship with Home Health [Bridge, LTD].")

If approved by the Court, the Settlement will provide for the issuance of notice to all Eligible Settlement Participants as provided in the attached Agreement and outlined below. The Parties respectfully submit that the proposed Settlement is fair, adequate, and reasonable and satisfies the criteria for approval under the FLSA. Settlement was achieved during arms'-length negotiations conducted by experienced counsel, and after a full day of videoconference mediation before third-party neutral, Michael Ungar with Ulmer & Berne LLP. If approved by the Court, the Settlement will make settlement payments available to the Eligible Settlement Participants who elect to participate in the Settlement.

The settlement documents submitted for approval and entry by the Court consist of the following:

**Exhibit A**:  Joint Stipulation of Settlement and Release;

**Exhibit B**:  Proposed Order of Dismissal and Approving Settlement;

**Exhibit C**:  Declaration of Robi J. Baishnab;

**Exhibit D**:  Settlement Notice and Consent and Release Form; and,

**Exhibit E**:  Declaration of John Murta.

The following sections explain the nature of the action, the negotiations, the principal terms of the Settlement and the propriety of approving the Settlement and the proposed distributions of settlement proceeds.

II.    FACTUAL AND PROCEDURAL BACKGROUND

A.    The Action

On November 22, 2019, Representative Plaintiff, through Nilges Draher LLC ("Plaintiffs' Counsel"), filed the Action against Defendants on behalf of herself and other similarly situated current and former employees alleging overtime violations under the FLSA, 29 U.S.C. §§ 201, *et*

*seq.* and O.R.C. § 4111.03(D), as well as for violations of the Ohio Prompt Pay Act. Specifically, Representative Plaintiff alleged that Defendants failed to pay her and similarly situated home health providers for time spent traveling from one work location to another within the same workday.[2] On January 23, 2020, Defendants answered, denying any liability or wrongdoing of any kind.[3]

Representative Plaintiff filed her Motion for Conditional Certification on February 21, 2020.[4] It was fully briefed by the Parties and granted by the Court on June 19, 2020.[5] The Parties jointly requested that the Court stay case deadlines pending private mediation before Mike Ungar.[6]

### B.     Negotiation of the Settlement

The Parties engaged in good-faith, arms'-length negotiations.[7] As part of the mediation process, Defendants produced time and payroll data, along with location data, for 57 putative collective members, which included Representative Plaintiff. Plaintiffs' Counsel engaged a PhD-level economist (Economist) to analyze the produced data and to build a damages model. The model was shared with Defendants in advance of mediation. The Parties defined "Eligible Settlement Participants" as those employees identified as having damages in model, including Representative Plaintiff.[8] Defendants represent that the data produced for mediation and which

---

[2] *See* ECF No. 1; Declaration of Robi J. Baishnab (Baishnab Decl.) at ¶ 7. Plaintiff's Ohio Rule 23 class action allegations were dismissed pursuant to agreement. (ECF No. 24).

[3] ECF No. 7; Baishnab Decl. at ¶ 8.

[4] *See* ECF Nos. 11, 12, and 16.

[5] *See* ECF Nos. 13, 15, and 26; Baishnab Decl. at ¶ 9.

[6] *See* ECF Nos. 27, 28, 29, and 8/3/2020 Order [non-document]; Baishnab Decl. at ¶ 10.

[7] Baishnab Decl. at ¶ 11.

[8] Agreement at ¶¶ 5 and 16; *Id.*

27951684.1

served as the basis for negotiations was complete and accurate, or sufficient for the purposes of calculations or extrapolation, for the Eligible Settlement Participants as conditionally certified by the Court: All former and current full-time Home Health Aides, or similar home care providers with different job titles, employed by Health Care Bridge, Inc. and Health Care Bridge, LLC, who worked at more than one location in a workday, and who worked 40 or more hours, during any workweek during the period of time from November 22, 2016 to July 18, 2020.[9]

Using the damages model, Plaintiffs' Counsel calculated the mathematical expected value ("EV") of the case through trial using TreeAge Pro©, a decision tree software. Specifically, he assigned subjective probability values to each anticipated stage of litigation (*e.g.*, conditional certification, decertification, establishing willfulness, establishing entitlement to liquidated damages in various amounts, etc.). Each of these risk probabilities were then compounded and multiplied by the damages calculated for mediation. By utilizing this process, Plaintiffs' Counsel was able to assess risk and economic value of the case. The process and results were discussed with Representative Plaintiff prior to mediation.[10]

The Parties reached settlement at mediation on September 1, 2020; and filed their Joint Notice of Settlement on September 3, 2020.[11] The terms of that settlement are reflected in the Agreement.[12]

---

[9] July 18, 2020 is the last date of data produced. **Ex. E**, John Murta Declaration (Murta Decl.) at ¶ 4; Baishnab Decl. at ¶ 11.

[10] Baishnab Decl. at ¶ 12. An example calculated EV is attached as Exhibit 1 of the Baishnab Decl. The actual calculated EV can be submitted to the Court for in camera review, if the Court so directs.

[11] ECF No. 31.

[12] Baishnab Decl. at ¶ 13.

27951684.1

### C.    __The Settlement Terms__

In exchange for payment and subject to Court approval, the action will be dismissed with prejudice.[13] To inform Eligible Settlement Participants of the Settlement, the Parties have submitted and attached as **Exhibit D** to this Joint Motion, the proposed Notice of Settlement of Lawsuit and Consent and Release Form ("Consent and Release Forms"). The notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendants and provided to Representative Plaintiff under the Agreement. Eligible Settlement Participants will have 60 days to join the Settlement.[14] If approved by the Court, the Settlement will cover Representative Plaintiff, Opt-in Plaintiff Ri'Chell Levert-Fields, and all of the Eligible Settlement Participants who elect to participate in the Settlement by signing and returning Consent and Release Forms (Settlement Group Members).[15]

The Total Eligible Settlement Amount is **$150,000.00**, which sum will cover: (a) all of the Individual Payments to the Settlement Group; (b) Representative Plaintiff's Service Payment of $3,000.00; (c) Plaintiffs' Counsel's attorneys' fees of one-third (1/3) of the Total Eligible Settlement Amount; (d) Plaintiffs' Counsel's litigation expenses; and (e) costs of settlement notice and check distribution. This amount does not include Defendants' share of the applicable employer tax withholdings, and the cost of mediation is being paid by Defendants outside the Total Eligible Settlement Amount.[16]

---

[13] Agreement at ¶ 35.

[14] *Id.* at ¶¶ 36 to 39.

[15] *See, e.g.*, *Id.* at ¶¶ 2, and 4 to 5.

[16] *Id.* at ¶ 24; Baishnab Decl. at ¶ 15.

27951684.1

### 1.  Allocation of the Settlement Fund

After deducting (b) through (e) above, the remaining amount will be divided into Individual Payments to the Eligible Settlement Participants. The Individual Payments will be calculated by Plaintiffs' Counsel and will be based proportionally on each Eligible Settlement Participant's alleged overtime damages during the settlement period.[17] The Total Eligible Settlement Amount of $150,000 represents approximately 97% of the maximum 2-years unpaid overtime as calculated by Plaintiffs' Economist. It also represents approximately 103% of the calculated EV.[18]

The Consent and Release Forms will advise the Eligible Settlement Participants of their estimated Individual Payment amounts. The Eligible Settlement Participants who sign and return Consent and Release Forms will participate in the Agreement and their claims will be released as defined in the notice.[19] Assuming that there is 100% participation of the Eligible Settlement Participants, the average payment would be approximately $1,738.75.[20] Opt-in Plaintiff Ri'Chell Levert-Fields will receive the reasonable minimum payment of $50.00.[21]

As provided in the Agreement, any funds unclaimed due to lack of participation will be reallocated to the Eligible Settlement Participants on an equitable *pro rata* basis. Plaintiffs' Counsel will determine the *pro rata* redistribution of unclaimed funds and provide Defendants' Counsel with the revised payment list, if applicable. Stale Settlement checks, as provided in the

---

[17] Agreement at ¶¶ 25 to 26; Baishnab Decl. at ¶ 16.

[18] Baishnab Decl. at ¶¶ 12 and 16. Incidentally, the average of 97% and 103% is an even 100%.

[19] Agreement at ¶¶ 30 to 32, and 36 to 38; and **Ex. D**.

[20] Baishnab Decl. at ¶ 16.

[21] Agreement at ¶ 26.

Agreement, will be donated to Community Legal Aid, at 401 Market Avenue N., Suite 103, Canton, OH 44702.[22]

### 2. Service Payment

A Service Payment in the amount of **$3,000.00** is to be deducted from the Total Eligible Settlement Amount and paid to Representative Plaintiff as recognition of her investment and prosecution of this matter to class wide resolution, and more importantly, in exchange for entering into a separate individual Settlement Agreement and General Release which is not being attached because it does not require Court approval.[23] As demonstrated by the fully executed agreements and by joining this Motion, Defendants demonstrate non-opposition to the requested Service Payment.[24]

### 3. Attorneys' Fees and Costs

Plaintiffs' Counsel requests fees of **$50,000.00**, or one-third (1/3) of the Total Eligible Settlement Amount. In addition, Plaintiffs' Counsel requests reimbursement of reasonable costs and expenses incurred or to be incurred totaling **$6,555.83** from the Total Eligible Settlement Amount. These costs include the following: $400.00 (filing fee); $12.15 (general postage); $27.90 (service of Complaint and Summons); $6,017.50 (Plaintiffs' Economist's consulting fees); and $98.28 (estimated costs to distribute notices and checks). By executing the Agreement and joining this Motion, Defendants demonstrate their non-opposition to the requested attorneys' fees and costs.[25]

---

[22] Agreement at ¶¶ 40 to 41; Baishnab Decl. at ¶ 17.

[23] Agreement at ¶¶ 28 and 30; Baishnab Decl. at ¶ 18. If necessary, the Parties can submit the individual Settlement Agreement and General Release for in camera review.

[24] Agreement at Page 8; Baishnab Decl. at ¶ 18.

[25] Agreement at ¶ 29 and at Page 8; Baishnab Decl. at ¶ 19.

**III.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT.**

Settlement of claims made pursuant to Section 216(b) of the FLSA are subject to approval by the Court. As shown in the attached Declaration of Plaintiffs' Counsel Robi J. Baishnab, and as explained below, the Court should approve the Settlement.

**A.    The Seven-Factor Standard is Satisfied.**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."[26] As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"[27] The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[28]

Application of those factors to this settlement demonstrates that the Court should approve the Settlement.

---

[26] *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982)).

[27] *Crawford v. Lexington-Fayette Urban Cty. Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

[28] *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir. 1983)); *Crawford*, 2008 WL 4724499 at *3.

1.      **No Indicia of Fraud or Collusion Exists.**

Plaintiffs' Counsel and Defendants' Counsel have extensive experience litigating FLSA claims, including claims for unpaid overtime, and each were given the opportunity to assess the merits the parties' claims and defenses, as well as the potential damages at issue in this case.[29] Clear from the Parties conditional certification briefing, and as discussed during the March 24, 2020 Case Management Conference, the issues in this case were highly disputed and remain disputed.[30] Defendants' denied liability and continue to deny liability.[31]

The Parties reached a Settlement only after arms'-length and good-faith negotiations between the Parties, including a full day of mediation before third-party neutral, Mike Ungar.[32] As such, there is no indicia of fraud or collusion.

2.      **The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval of the Settlement.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties disagree about the merits of Representative Plaintiff's claims. Representative Plaintiff claims that Defendants failed to pay her and others similarly situated for all of time worked, and that such failures resulted in unpaid overtime compensation. Defendants deny it violated any federal or state law, and have consistently maintained this position throughout the duration of this case. Had this matter not settled, ongoing

---

[29] Baishnab Decl. at ¶¶ 2 to 6, 14, and 20.

[30] *See, e.g.* ECF Nos. 11 to 14, and 15 to 16; Baishnab Decl. at ¶ 22.

[31] ECF No. 7; Baishnab Decl. at ¶ 14.

[32] *See* ECF Nos. 27 and 29; and Baishnab Decl. at ¶¶ 10 to 11, and 13.

27951684.1

disputes would remain regarding liability, damages, certification of a class, and whether the two-
or three-year statute of limitations applied.[33]

If forced to litigate this case further, the Parties would certainly engage in complex, costly,
and protracted wrangling, which could result in no recovery for the class at all. By contrast, the
Settlement promptly and efficiently provides substantial relief to the Settlement Group Members
and amplifies the benefits of that relief through the economies of class resolution. Moreover, the
Settlement confers substantial benefits upon the Settlement Group Members. For example, the
Total Eligible Settlement Amount reflects approximately 97% of the maximum calculated 2-year
unpaid overtime and approximately 103% of the calculated EV. At 100% participation, the average
settlement payment will be $1,738.75. Unclaimed amounts will be redistributed on a *pro rata*
basis, thereby potentially increasing the Settlement Group Members' recovery.[34]

The Settlement terms represent a successful resolution of the claims given that a trier of
fact might conclude that the collective is not entitled to any relief or to relief in an amount less
than the amount agreed to in the Settlement, or that a court might not allow the claims to proceed
collectively. It also provides immediate and substantial relief without the attendant risks and delay
of continued litigation and appeals.[35]

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently.

The Parties engaged in substantial investigation and informal discovery prior to mediation
and related negotiations. Defendants produced time and payroll data for, or that could be
extrapolated for, the putative collective members and Plaintiffs' Economist analyzed the data and

---

[33] Baishnab Decl. at ¶¶ 22 to 23.

[34] Agreement at ¶¶ 40 to 41; Baishnab Decl. at ¶¶ 12, 16 to 17, and 22.

[35] Baishnab Decl. at ¶ 21.

built a damages model. The model was shared with Defendants in advance of mediation.[36] Defendants provide a sworn Declaration that the data produced for mediation and which served as the basis for negotiations was complete and accurate, or sufficient for the purposes of calculations or extrapolation, for the Eligible Settlement Participants as conditionally certified by the Court.[37]

Plaintiffs' Counsel calculated the mathematical EV by compounding and multiplying the risks of various stages of litigation and potential damages. By utilizing this process, Plaintiffs' Counsel was able to assess risk and economic value of the case, rather than simply relying on intuition and experience. The settlement that was reached exceeded the pre-mediation EV, which supports the conclusion that the proposed settlement is fair, adequate, and reasonable.[38] Further, the Parties extensively debated the facts and law prior to and during mediation, which allowed both sides to more fully appreciate the issues likely to arise at trial.[39]

     **4.**       **Given the Risks of Litigation, the Court Should Approve Settlement.**

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. For example, additional expert analysis of unpaid location-to-location travel time could be expected to cost thousands of additional dollars. Moreover, Defendants raised affirmative defenses to Representative Plaintiff's claims, and the outcome of those defenses is uncertain as well. Consequently, continued litigation would be risky for all Parties.[40]

---

[36] Agreement at ¶ 16; Baishnab Decl. at ¶ 11.

[37] Murta Decl. at ¶ 4; Baishnab Decl. at ¶ 11.

[38] Baishnab Decl. at ¶ 12.

[39] *Id*. at ¶ 22.

[40] *Id*. at ¶ 23.

### 5.      The Uncertainty of Recovery Supports Approval.

Representative Plaintiff's range of possible recovery is also open to dispute. Even if Representative Plaintiff succeeded on the merits of her claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties disagree about whether the alleged unpaid travel time is compensable, whether a two- or three-year statute of limitations should apply, and whether the class could recover liquidated damages.[41]

### 6.      Experienced Counsel Recommend Approval of Settlement.

Plaintiffs' Counsel has extensive experience in wage-and-hour collective and class actions, the Parties have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Plaintiffs' Counsel and Defendants' Counsel support the Settlement as fair, adequate, and reasonable, and in the best interest of the putative class as a whole, as demonstrated by this Joint Motion and as described in the attached Declaration of Robi Baishnab.[42]

### B.      **The Settlement Distributions are Fair, Reasonable and Adequate.**

When scrutinizing an FLSA collective action settlement, "a court must ensure that the distribution of the Settlement proceeds is equitable."[43] All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the class.

### 1.      The Settlement Payments are Fair, Reasonable, and Adequate.

The final individual payments made to Settlement Group Members after the notice period closes will be calculated and based proportionally on each Eligible Settlement Participant's alleged

---

[41] *Id.*

[42] *Id.* at ¶¶ 12, 16, and 22 to 24.

[43] *Crawford*, 2008 WL 4724499 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

overtime damages during the settlement period.[44] The Total Eligible Settlement Amount represents approximately 97% of the calculated maximum 2-years unpaid overtime or 103% of the calculated EV.[45] If there is 100% participation, the average payment will be approximately $1,738.75. Unclaimed funds will be reallocated on an equitable *pro rata* basis. As such, each Eligible Settlement Participants are proportional to the amount of alleged overtime worked within the period covered by the Settlement, and possibly more through redistribution.[46]

### 2.    Representative Plaintiff's Service Payment is Proper and Reasonable.

Representative Plaintiff seeks a $3,000.00 service payment in recognition of her investment and prosecution of this matter to class wide resolution, and, more importantly, in exchange for entering into a separate individual Settlement Agreement and General Release.[47] While the individual Settlement Agreement and General Release does not require Court approval, courts nevertheless routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[48] Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[49]

---

[44] Agreement at ¶¶ 25 to 26.

[45] Baishnab Decl. at ¶¶ 12 and 16.

[46] Agreement at ¶¶ 40 to 41; Baishnab Decl. at ¶¶ 12, and 16 to 17.

[47] Agreement at ¶¶ 28 and 30; Baishnab Decl. at ¶ 18.

[48] *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

[49] *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010)).

27951684.1

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case."[50] Here, not only was Representative Plaintiff willing to shoulder the burden of being a named plaintiff and effectuating class wide relief, she also contributed significant time, effort, and detailed factual information, enabling Plaintiffs' Counsel to evaluate the strength of her case. Representative Plaintiff was also available and provided valuable guidance as the Parties were negotiating settlement, and provided Plaintiffs' Counsel with the information needed to evaluate whether the proposed settlement was in the best interest of the Settlement Group Members.[51] As such, in addition to being consideration in exchange for her general release, the Service Payment recognizes her time and efforts. Notably, in executing the Agreement and joining this Motion, Defendants demonstrate non-opposition to the requested Service Payment.[52]

**3. The Attorneys' Fees to Plaintiffs' Counsel are Proper and Reasonable.**

After the Court has confirmed that the terms of settlement are fair to Representative Plaintiff and the Settlement Group Members, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendants' agreement to pay Plaintiffs' Counsel one-third of the total gross settlement amount.[53]

---

[50] *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individual in question and "whether these actions resulted in a substantial benefit to Class Members").

[51] Baishnab Decl. at ¶ 18.

[52] Agreement at Page 8.

[53] *Id*. at ¶ 29; Baishnab Decl. at ¶¶ 15 and 19.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."[54] In *Fegley v. Higgins*,[55] the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."[56]

Here, the Parties request that the Court approve as reasonable attorneys' fees of $50,000.00, or one-third of the Total Eligible Settlement Amount. "[A]n award of one-third of the settlement fund as a fee award… is a normal fee amount in a wage and hour case."[57] This is consistent with numerous other wage-and-hour cases in which courts, including this Court, have approved an award of attorneys' fees of one-third of the Settlement amount.[58]

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses.[59] "In doing so, Plaintiffs' Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee

---

[54] 29 U.S.C. § 216(b).

[55] 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994).

[56] *Id*. at 1134–35 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502–03 (6th Cir. 1984)).

[57] *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *14 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, *10–11 (N.D. Ohio July 27, 2018)).

[58] Baishnab Decl. at ¶ 19, fn. 20.

[59] *Id*. at ¶ 19.

of recovery. This factor weighs in favor of approving the requested fee award."[60]

Finally, courts acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming."[61] This case involved contested issues of whether Defendants' employees performed work for which they were not properly compensated and, if so, how much of that time was compensable. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the Settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases.[62]

### 4. The Court Should Authorize Reimbursement of Expenses.

The Court should approve reimbursement of **$6,555.83** from the Total Eligible Settlement Amount, which includes: $400.00 (filing fee); $12.15 (general postage); $27.90 (service of Complaint and Summons); $6,017.50 (Economist's consulting fees); and $98.28 (estimated costs to distribute notices and checks).[63] "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement."[64] In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class."[65]

---

[60] *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19 (citation omitted).

[61] *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10 (citation omitted).

[62] *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

[63] Baishnab Decl. at ¶ 19.

[64] *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *20 (citation omitted).

[65] *Id.*

27951684.1

Plaintiffs' Counsel will recover no fees, or additional costs that may unexpectedly arise, during the course of effectuating settlement.[66] Because the requested fees, and reimbursement of costs and expenses are reasonable and were incurred in the prosecution of Representative Plaintiffs' claims, the Court should approve the request. Further, by executing the Agreement and joining this Motion, Defendants demonstrate their non-opposition to the requested attorneys' fees and costs.[67]

## IV.    DISMISSAL AND JURISDICTION OVER SETTLEMENT

Finally, the Parties agree that approval, and performance, of this Settlement results in appropriate dismissal of the Action with prejudice; and they agree and ask that the Court expressly retain jurisdiction to enforce the terms of the Settlement.[68]

## V.    CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement, which is attached as **Exhibit B**.

---

[66] Baishnab Decl. at ¶ 19.

[67] Agreement at ¶ 29 and at Page 8.

[68] *Id*. at ¶¶ 35 and 53.

27951684.1

Respectfully submitted,

**NILGES DRAHER LLC**

/s/ *Robi J. Baishnab*
Robi J. Baishnab (0086195)
34 N. High St., Ste. 502
Columbus, OH 43215
Telephone:  (614) 824-5770
Facsimile:  (330) 754-1430
Email: rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
7266 Portage Street, N.W., Suite D
Massillon, OH 44646
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email:  hans@ohlaborlaw.com
          sdraher@ohlaborlaw.com

*Counsel for Plaintiffs*

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ *Brian G. Dershaw (with permission)*
Brian G. Dershaw (0072589)
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
Email: bdershaw@taftlaw.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/  *Robi J. Baishnab*
Robi J. Baishnab

*Counsel for Plaintiffs*

18

27951684.1